UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,              04-CR-6168T(P)

       v.                               **DECISION**
                                                 **and ORDER**

JOSEPH BARTHOLOMEW,

                Defendant.
_____

## INTRODUCTION

Defendant Joseph Bartholomew ("defendant") is charged in a single-count Superseding Indictment with being a felon in possession of a firearm and ammunition, in violation 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 30). By omnibus motion dated January 27, 2005, defendant moves, inter alia, to suppress statements made and tangible evidence seized in connection with his arrest.

On review of the parties' submissions, Magistrate Judge Marian Payson recommended by Report and Recommendation March 11, 2005, that defendant's motions to suppress be denied.[1] (Doc. No. 40). Defendant filed timely objections to Magistrate Payson's Report and Recommendation, claiming that the Magistrate erred in recommending that his motion to suppress the statement, "[y]es,, there's a shotgun in the trunk" be denied. (Doc. No. 47). Defendant contends that since the statement was a product of pre-Miranda

---

[1] The other issues raised in defendant's omnibus motion have since been resolved. See Doc. No. 34.

custodial interrogation, its admission as evidence against him would violate his Fifth Amendment right against self-incrimination.[2] The government argues, however, that the statement may be used against defendant because the interrogation fits within the public safety exception to the Miranda rule. For the reasons set forth below, I adopt Magistrate Payson's Report and Recommendation in its entirety, and defendant's motions to suppress statements and tangible evidence, including the statement, "[y]es there's a shotgun in the trunk," are denied.

## BACKGROUND

The facts relevant to defendant's motion are set forth in Judge Payson's March 11, 2005 Report and Recommendation. (Doc. No. 40). In summary, at approximately 9:30 p.m. on January 30, 2004, Officer Chris Mears of the Ogden Police Department was patrolling State Route 531 in the Town of Ogden when he received a radio message indicating that the Orleans County Sheriff's Department was looking for an individual named Joseph Bartholomew, who was believed to be driving a black Cadillac Seville in the area of

---

[2]Defendant does not object to Magistrate Judge Payson's recommendation that his other motions to suppress be denied. See Defendant's Objection to Report an Recommendation Filed March 11, 2005 (Doc. No. 47). After having reviewed de novo those portions of Magistrate Judge Payson's March 11, 2005 Report and Recommendation addressing issues other than the admissibility of the statement at issue, I hereby adopt those portions in their entirety. See 28 U.S.C. § 636(b)(1).

Route 531. (Tr. 7).[3] Shortly thereafter, Officer Mears observed a black Cadillac Seville traveling eastbound on Route 531. (Tr. 7). He followed the vehicle, and once he confirmed that the license plate number of that vehicle matched the license plate number of the vehicle which was the subject of the earlier broadcast, he activated his emergency equipment and signaled the driver of the black Cadillac to pull to the side of the road. (Tr. 8). The driver of the vehicle complied and exited Route 531 at the Manitou Road exit. However, when he pulled over to the right shoulder he parked the vehicle so that it obstructed the driving lane. (Tr. 8). Officer Mears then parked his vehicle behind the black Cadillac and approached the driver. (Tr. 12). He then asked the driver for his driver's license, whereupon the driver produced a New York State photo identification card in the name of Joseph J. Bartholomew, explaining that his driver's license has been suspended "for child support." (Tr. 12). Officer Mears noted that the photograph on the identification card resembled the driver, and then asked Joseph Bartholomew ("defendant") if he had experienced any trouble in Orleans County earlier that evening. (Tr. 13). Defendant asked whether his girlfriend had called the

---

[3] All citations to "Tr." refer to the transcript of the Suppression Hearing held before Magistrate Judge Payson on December 30, 2004. (Doc. No. 36).

police and added, "I can't believe she did that."[4]   (Tr. 14). After confirming with the dispatcher that Joseph Bartholomew had a revoked driver's license, Officer Mears placed defendant in custody for operating a motor vehicle with a suspended driver's license, and placed him in the back seat of his patrol car.  (Tr. 14).

Since there was no one in the vicinity able to take custody of the vehicle and because it protruded into the driving lane, Officer Mears decided that it should be towed and impounded.  (Tr. 15-21). Pursuant to the Ogden Police Department's towing policies and procedures, set forth in General Order No. 511, Officer Mears conducted an inventory search of the black Cadillac. (Tr. 15-21). General Order No. 511 provides in relevant part:

> Damaged or illegally parked vehicle shall be towed:
> (1) When necessary to maintain the flow of traffic
> (2) To correct a hazardous condition (i.e. blocking, etc.
> (3) To provide access to a driveway after receipt of a citizen complaint
> (4) As illegally parked, and the officer determines it must be towed
> (5) When snowbound or parked on snow emergency routes during a declared snow emergency, or
> (6) As abandoned or junked vehicles parked on the street
> (7) When parked on a roadway in violation of Vehicle and Traffic Laws and statutes
> (8) As determined by the reporting officer for purposes of liability, safety, or other appropriate reasons
>
> In situations incidental to arrest, vehicles shall only be towed for safekeeping, evidence

---

[4] At the suppression hearing, Officer Mears was unable to recall whether defendant referred to a wife or a girlfriend. (Tr. 13).

processing, or if they are illegally parked, blocking or hazardous.

> In all towing situations, officers shall:
> [I]nspect the vehicle's compartments and open any closed containers whose contents can not be ascertained from examining the containers['] exterior. Remove any lose articles of value prior to towing. These articles shall be inventoried on a Property Custody Report and delivered to the Property Office. Each officer is advised to conduct a thorough inventory of each vehicle.

See Report and Recommendation dated March 11, 2005, n.4 (Doc. No. 40).

In the course of his subsequent inventory search of defendant's car, Officer Mears discovered a box of 12-gauge shotgun shells in a compartment located beneath the armrest between the driver's and passenger seats. (Tr. 15). He then approached defendant, who was seated in the back seat of the patrol car, and although he had yet to advise defendant of his Miranda rights, he asked him if there were any firearms in the vehicle. (Tr. 15). Defendant replied, "[y]es, there's a shotgun in the trunk." (Tr. 15). Defendant now moves to have that statement suppressed.

## **STANDARD OF REVIEW**

Pursuant to 29 U.S.C. § 636(b)(1), after the filing of a Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations. After such filing,

> [a] judge of the court shall make a de novo determination of those portions of the report or specified proposed

>   finding or recommendations to which objection is made.
>   A judge of the court may accept, reject, or modify, in
>   whole or in part, the findings or recommendations made by
>   the magistrate.

28 U.S.C. § 636(b)(1).

I apply this standard to the following analysis.

## **DISCUSSION**

The defendant asks this Court to modify or set aside Magistrate Payson's March 11, 2005 Report and Recommendation denying his motion to suppress the statement "[y]es there is a shotgun in the trunk." Specifically, defendant contends that the statement was a result of improper custodial interrogation because when Officer Mears posed the question which elicited the statement, defendant had not been advised of his <u>Miranda</u> rights. The Government asserts that the circumstances surrounding the interrogation fall within the public safety exception to <u>Miranda</u> requirement and thus did not require a prior reading of the <u>Miranda</u> warnings.

Generally, statements made by a defendant while in custody in response to police interrogation are inadmissible, unless the defendant first was made aware of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that privilege. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). However, in <u>New York v. Quarles</u>, 467 U.S. 649 (1984), the Supreme Court

announced a "public safety" exception to this <u>per se</u> rule, under which officers are permitted to pose questions necessary to secure their own safety and the safety of the public. <u>Id.</u> at 655-659. The purpose of such an exception is to allow police officers to "follow their legitimate instincts when confronting situations presenting a danger to public safety." <u>Id.</u> at 659.

Nonetheless, constitutional rights, such as those at issue here, must not be "lost in the reality of the street." <u>United States v. Anderson</u>, 929 F.2d 96, 99 (2d Cir.1991). Answers to pre-<u>Miranda</u> interrogation will not be admitted against a defendant where the facts of the case make it clear that there was no immediate threat to the public. See <u>Orozco v. Texas</u>, 394 U.S. 324 (1969) (defendant's admission concerning whereabouts of gun inadmissible where several hours had elapsed since defendant had been seen at crime scene with a gun and he was asleep when he was located by law enforcement); <u>United States v. Jones</u>, 154 F. Supp.2d 617 (S.D.N.Y.2001) (officer justified in asking defendant if he owned a gun where he had found ammunition in an apartment in which a young child was present).

Given the fact-specific nature of a reasonableness inquiry, the court must look at the totality of circumstances to determine whether the public safety exception to the <u>Miranda</u> rule applies to a given case. <u>Reyes</u>, 353 F.3d at 152. Based on the facts in the record, I find that Officer Mears acted reasonably when he asked

defendant if there was a firearm in the vehicle.  As Magistrate Judge Payson recognized, '[h]aving discovered the ammunition, Mears was reasonable in concluding that a loaded firearm might also be present in the car."  Report and Recommendation Issued March 11, 2005, p. 14 (Doc. No. 40).  The possibility that a loaded shotgun could also be found inside defendant's vehicle created a significant danger to both Officer Mears and the tow operator who was responsible for removing defendant's vehicle.  Therefore, I find that defendant's statement that, "[y]es there is a shotgun in the trunk" was the result of acceptable pre-<u>Miranda</u> interrogation pursuant to the public safety exception.

## **CONCLUSION**

For the reasons set forth above, I adopt Judge Payson's March 11, 2005 Report and Recommendation (Doc. No. 40) in its entirety and deny each of defendant's motions to suppress, including his motion to suppress the statement, "[y]es, there is a shotgun in the trunk."

ALL OF THE ABOVE IS SO ORDERED.

                                                S/ Michael A. Telesca
_____
Honorable Michael A. Telesca
United States District Judge

DATED:    April 29, 2005
          Rochester, New York